UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

05CR10068RCL

| UNITED STATES OF AMERICA | ) | CRIMINAL NO. |
| --- | --- | --- |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | 15 U.S.C. §§ 80b-6 & 80b-17 |
| | ) | (Violation of Investment |
| THURSTON GENE GILMAN | ) | Adviser's Act §§ 206, 217) |
| | ) | 18 U.S.C. § 1341 (Mail Fraud) |
| _____ | ) | 18 U.S.C. § 1343 (Wire Fraud) |

INDICTMENT

The Grand Jury charges that:

GENERAL ALLEGATIONS

At all times relevant to this indictment:

1.  THURSTON GENE GILMAN (GILMAN) lived at 11 Morse Road in Newton, Massachusetts. GILMAN was a financial adviser and was licensed to sell stocks, bonds, mutual funds, insurance and variable annuities. He held NASD registrations, including Series 6 (mutual fund and insurance contracts), Series 7 (general securities representative) and Series 24 (general securities principal).

2.  Aspen Trading Company, LLC (ASPEN), was an investment company created by GILMAN in 1998 with a principal place of business at 18 Crawford Street, Needham, Massachusetts. GILMAN exercised full authority and control over the activities and operations of ASPEN.

3.  Arbor Securities, LLC, also known as Arbor Securities, LTD (collectively, ARBOR), was an investment company created by GILMAN

1

in 1998 with a designated place of business in Nassau, Commonwealth of The Bahamas, and a principal office under the name Arbor Associates located at Suite 8, 220 Reservoir Street, Needham, Massachusetts. GILMAN exercised full authority and control over the activities and operations of ARBOR.

4. Edgewater Securities, LLC (EDGEWATER), was a limited liability company created by GILMAN in 1995 with a principal place of business at 18 Crawford Street, Needham, Massachusetts. GILMAN exercised full authority and control over the activities and operations of EDGEWATER.

5. Commonwealth Financial Holdings, Inc. (COMMONWEALTH) was a company created by GILMAN in 1998 with a principal place of business at 18 Crawford Street, Needham, Massachusetts. GILMAN exercised full authority and control over the activities and operations of COMMONWEALTH.

## GILMAN AS AN INVESTMENT ADVISER

6. At all times relevant to this Indictment, GILMAN was in the business of providing investment advice to investors for fees and commissions. Among other activities, GILMAN provided financial planning advice, made investment recommendations, and bought and sold securities on behalf of investors.

7. At times relevant to this Indictment, GILMAN offered to and did receive and manage investment funds on behalf of investors. GILMAN informed investors that their funds were invested in

domestic securities and that their funds were maintained in secure investment accounts.

8. At times relevant to this Indictment and as a part of his duties and responsibilities as an investment adviser, GILMAN assisted investor clients with investing funds, tax planning, and in making fund distributions to them as needed or requested.

9. At times relevant to this Indictment and as a part of his duties and responsibilities as an investment adviser, GILMAN caused investors to sign account opening documents to establish investment accounts in their names, initially at ASPEN and subsequently at ARBOR. GILMAN exercised management authority and control over the accounts of ASPEN and ARBOR.

10. At times relevant to this Indictment and as a part of his duties and responsibilities as an investment adviser, GILMAN provided investors with routine account statements that purportedly showed investors the assets in which GILMAN had invested on their behalf, the value of those investments, and the income and expenses associated with their accounts.

11. From in or about November 1998, to in or about November 2003, investors entrusted funds to GILMAN in the aggregate amount of $19,921,248, more or less, for the purpose of being invested in marketable securities and other established investment vehicles that would preserve the investors' capital and provide them with safe and reasonable returns on their investments. GILMAN deposited

investor funds entrusted to him into various bank accounts held in the name of ASPEN and ARBOR. In particular:

    A.  On or before January 1, 1999, GILMAN established a bank account at BankBoston in the name of ASPEN. GILMAN exercised full authority and control over the activity in this account.

    B.  Beginning in or about November 1998, GILMAN established and exercised full authority and control over successive accounts in the name of ARBOR, at the following banks and entities:

1. Surety Bank and Trust Company Limited (SURETY)
   Nassau, Bahamas;

2. Alliance Investment Management (ALLIANCE)
   Nassau, Bahamas;

3. Antigua Overseas Bank, Ltd. (A.O.B.)
   St. Johns, Antigua;

4. Americas International Bank (A.I.B.)
   Nassau, Bahamas;

5. RBC Dominion Securities Global Limited (RBC)
   Nassau, Bahamas; and

6. Penson Financial Services, Inc. (PENSON)
   Dallas, Texas.

### THE SCHEME TO DEFRAUD

12. From in or about November 1998, to in or about November 2003, GILMAN transferred investor funds entrusted to him, aggregating $19,921,248, more or less, to accounts in the name(s) of ASPEN and ARBOR.

13. From in or about November 1998, to in or about November 2003, GILMAN represented to investors who entrusted funds to him

that their funds were invested for their benefit through ASPEN and ARBOR in domestic securities and other established investment vehicles that would preserve the investors' capital and provide them with safe and reasonable returns on their investments.

14. From in or about November 1998, to in or about November 2003, and contrary to the representations he made to investors, GILMAN defrauded the investors by transferring in excess of $11,000,000 of the investors' funds, by wire and by check, from accounts in the name(s) of ASPEN and ARBOR to various bank accounts GILMAN controlled and for his own use and purposes.

15. From in or about November 1998 to in or about November 2003, as a part of the scheme to defraud the investors who entrusted their money to him, and to conceal his unauthorized and unlawful diversion of the investors' funds for his own use and purposes, GILMAN fabricated, and directed others to fabricate, account statements which falsely represented account balances, investor holdings, transactions and income for each investor account. GILMAN, and others known and unknown to the Grand Jury and acting at the direction of GILMAN, prepared the false and fictitious account statements and mailed them to the investors so the investors would believe that their funds entrusted to GILMAN were invested in domestic securities and other established investment vehicles, and were safe and secure, as GILMAN promised.

## THE DIVERSION OF INVESTOR FUNDS

### The Apollo Diversions

16. On or about December 18, 1998, GILMAN incorporated Vision 2000, Inc., also known as Apollo Eye Gear, Inc. (APOLLO), in the state of Nevada. APOLLO maintained a principal office at # 8, 220 Reservoir Street in Needham, Massachusetts. GILMAN was the President and sole stockholder of APOLLO. APOLLO, now defunct, was a speculative, start-up eye wear company over which GILMAN exercised authority and control.

17. On or about January 11, 1999, GILMAN opened an account at Bank of America, Las Vegas, Nevada, in the name of APOLLO.

18. From on or about December 3, 1998, to on or about June 30, 2000, on at least 62 separate occasions, GILMAN unlawfully directed approximately $2,105,581, more or less, of the funds entrusted to him by investors from the ARBOR accounts to the APOLLO account at Bank of America and to creditors of APOLLO.

### The Trade Tek Diversions

19. On or about January 23, 1998, GILMAN organized Trade Tek LLC, as a limited liability company under the laws of Nevada. Trade Tek LLC maintained a principal place of business at #200, 200 Reservoir Street in Needham, Massachusetts. Trade Tek LLC, now defunct, was a speculative, start-up software development company over which GILMAN exercised authority and control.

20. On or about November 4, 2001, GILMAN incorporated Trade Tek, LTD, in the state of Delaware as a successor company to Trade

6

Tek, LLC. Trade Tek, LTD maintained a principal place of business at #200, 200 Reservoir Street in Needham, Massachusetts.

21. On or about the following dates, GILMAN opened bank accounts for Trade Tek, LLC and Trade Tek, LTD (collectively, TRADE TEK) as follows:

| DATE | BANK | ACCOUNT NAME | ACCOUNT NUMBER |
|---|---|---|---|
| 01/01/99 | BankBoston/ Fleet Bank | Trade Tek, LLC | 898-54710 |
| 11/28/00 | Bank of America | Trade Tek, LLC | 02611-10918 |
| 11/28/00 | Bank of America | Trade Tek, LLC (Payroll) | 02619-10919 |
| 03/20/02 | Penson Financial | Trade Tek | 12700134 |
| 03/20/02 | Penson Financial | Trade Tek Ltd. (Special) | 12700878 |
| 04/18/02 | Bank of America | Trade Tek, Ltd. (Operating) | 02612-19536 |
| 04/18/02 | Bank of America | Trade Tek, Ltd. (Payroll) | 02610-19537 |
| 04/18/02 | Bank of America | Trade Tek, Ltd. (Travel) | 02618-19538 |
| 05/03/02 | Citizens Bank | Trade Tek, Ltd. (Payroll A/C) | 113379-994-6 |
| 05/03/02 | Citizens Bank | Trade Tek, Ltd. | 113379-995-4 |

22. From on or about January 22, 1999, to on or about November 5, 2003, on at least 158 separate occasions, GILMAN unlawfully directed approximately $7,537,600 of the funds entrusted to him by investors from accounts of ASPEN and ARBOR to the accounts of TRADE TEK listed in paragraph 21 above, including $1,537,400, more or less, transferred to TRADE TEK accounts in Boston, Massachusetts.

23. On or about February 18, 2000, GILMAN established and exercised authority and control over account No. 13010-055-0 at Citizens Bank in Boston in the name of GILMAN and DG.

24. From on or about November 14, 2000, to on or about August 8, 2002, on at least 4 separate occasions, GILMAN unlawfully directed approximately $80,000 of the funds entrusted to him by investors from the accounts of ARBOR to the Citizens Bank account in the names of GILMAN and DG.

### The Edgewater Securities Diversions

25. On or about November 5, 1997, GILMAN opened bank account number 897-03612 in the name of EDGEWATER at BankBoston. GILMAN was co-signatory on the account and exercised full authority and control over the activity in this account.

26. From on or about November 25, 1998, to on or about December 16, 1999, on 26 separate occasions, GILMAN unlawfully directed approximately $1,115,000 of the funds entrusted to him by investors from the ARBOR accounts to the account he controlled in the name of EDGEWATER. GILMAN used these funds for his own purposes, including funding the operations of TRADE TEK.

### The Commonwealth Holdings Diversions

27. On or about March 12, 1999, GILMAN opened bank account number 974096349 at Bank of America in Tampa, Florida, in the name of COMMONWEALTH. GILMAN was the sole signatory on the account and exercised full authority and control over the activity in this account.

28. From on or about February 11, 2000, to on or about July 15, 2002, on at least nine occasions, GILMAN unlawfully directed approximately $319,160 of the funds entrusted to him by investors from the ARBOR accounts to the COMMONWEALTH accounts for his own purposes and use.

### The Aggregate Diversions

29. From in or about November 1998, to in or about November 2003, GILMAN unlawfully directed in excess of $11 million of the fund entrusted to him by investors from the accounts of ASPEN and ARBOR to accounts in the name of APOLLO, TRADE TEK, EDGEWATER and COMMONWEALTH.

### The Private Offering

30. From in or about March 2000 to in or about March 2001, GILMAN conducted a private offering under the name of COMMONWEALTH for the stated purpose of raising $10 million from new investors for the purpose of investing in TRADE TEK.

31. From in or about March 2000 to in or about March 2001, the private offering produced $425,000 in funds from new TRADE TEK investors.

32. From in or about March 2000 to in or about March 2001, and thereafter, GILMAN defrauded the new investors by failing to inform the new TRADE TEK investors that TRADE TEK had been and was continuously operated primarily with funds unlawfully diverted from investor funds entrusted to him.

## COUNT 1

**WILLFUL VIOLATION OF THE INVESTMENT ADVISER'S ACT OF 1940
(15 U.S.C. § 80b-6(1), 80b-6(2)), 80b-6(4) and 80b-17)**

33.  The Grand Jury realleges and incorporates by reference paragraphs 1 through 32 of this Indictment, and further charges:

34.  At all times relevant to this Indictment, GILMAN was an "investment adviser" within the meaning of Section 202(a)(11) [Title 15, United States Code, Section 80b-2(a)(11)].

35.  From in or about November 1998, to in or about November 2003, on divers dates, at Newton in the District of Massachusetts and elsewhere,

**THURSTON GENE GILMAN**

defendant herein, being an investment adviser, did by use of the mails and by use of means and instrumentalities of interstate commerce, willfully employ devices, schemes, and artifices to defraud; did willfully engage in transactions, practices, and courses of business which operated as a fraud and deceit upon clients and prospective clients; and did willfully engage in acts, practices, and courses of business which were fraudulent, deceptive, and manipulative, to wit, falsely representing that he would serve as an investment adviser exercising fiduciary responsibility with respect to client funds entrusted to him and thereafter misapplying client funds, including: transferring approximately $1,537,400, more or less, from the accounts of ARBOR at Nassau, Bahamas and Dallas, Texas, to accounts of TRADE TEK at

Boston, Massachusetts, and causing items to be delivered by the United States mails, including false and fictitious account statements mailed at Vancouver, British Columbia, Canada, for delivery to investors residing in Massachusetts.

All in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

## COUNTS 2 THROUGH 19

### WIRE FRAUD
### (18 U.S.C. § 1343)

36. The Grand Jury realleges and incorporates by reference paragraphs 1 through 32 of this Indictment, and further charges:

37. On or about the dates set forth below, at Boston, in the District of Massachusetts and elsewhere,

**THURSTON GENE GILMAN**

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce certain signs and signals for the purpose of executing such scheme and artifice, to wit: wire transfers of investor funds from accounts in the name of ARBOR to accounts in the name(s) of TRADE TEK and personal bank accounts held in his name, as follows:

| COUNT | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 2 | 03/29/00 | Wire transfer from ARBOR account 20321 at Surety Bank, Nassau, Bahamas, to TRADE TEK account 898-54710 at BankBoston, MA | $27,000 |
| 3 | 09/08/00 | Wire transfer from ARBOR account 20321 at Surety Bank, Nassau, Bahamas, to TRADE TEK account 898-54710 at BankBoston, MA | $102,400 |
| 4 | 09/15/00 | Wire transfer from ARBOR account 20321 at Surety Bank, Nassau, Bahamas, to TRADE TEK account 898-54710 at BankBoston, MA | $28,000 |
| 5 | 10/19/00 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $100,000 |

| COUNT | DATE | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 6 | 10/27/00 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $30,000 |
| 7 | 11/01/00 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to GILMAN account 113010-055-0 at Citizens Bank, MA | $15,000 |
| 8 | 11/14/00 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to GILMAN account 113010-055-0 at Citizens Bank, MA | $5,000 |
| 9 | 02/02/01 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $10,000 |
| 10 | 02/16/01 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $10,000 |
| 11 | 04/24/01 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $10,000 |
| 12 | 06/18/01 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $5,000 |
| 13 | 08/15/01 | Wire transfer from ARBOR1 account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $10,000 |
| 14 | 10/02/01 | Wire transfer from ARBOR account 1270027 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $20,000 |
| 15 | 11/01/01 | Wire transfer from ARBOR account 12700076 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $10,000 |
| 16 | 11/15/00 | Wire transfer from ARBOR account 12700647 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $10,000 |
| 17 | 11/30/01 | Wire transfer from ARBOR account 12700647 at PENSON, Dallas, TX, to TRADE TEK account 898-54710 at BankBoston, MA | $30,000 |
| 18 | 07/10/02 | Wire transfer from ARBOR account ARB 001 at ALLIANCE, Nassau, Bahamas, to GILMAN account 113010-055-0 at Citizens Bank, MA | $30,000 |
| 19 | 08/08/02 | Wire transfer from ARBOR account ARB 001 at ALLIANCE, Nassau, Bahamas, to GILMAN account 113010-055-0 at Citizens Bank, MA | $30,000 |

All in violation of Title 18 U.S.C. §§ 1343 and 2.

## COUNTS 20 THROUGH TO 37

### MAIL FRAUD
### (18 U.S.C. § 1341)

38. The Grand Jury realleges and incorporates by reference paragraphs 1 through 32 of this Indictment, and further charges:

39. On or about the dates set forth below, at Newton, Dedham, Arlington, and elsewhere in the District of Massachusetts,

**THURSTON GENE GILMAN**

having willfully and knowingly devised a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, for the purpose of executing said scheme and artifice to defraud, did cause false and fraudulent investor account statements to be delivered by U. S. Mail as set forth below:

| COUNT | DATE | SENDER | RECIPIENT |
|---|---|---|---|
| 20 | 09/28/01 | Arbor Securities, Vancouver, British Columbia, Canada | M.L., Dedham, MA |
| 21 | 10/31/01 | Arbor Securities, Vancouver, British Columbia, Canada | C.B., Newton, MA |
| 22 | 11/19/02 | Arbor Securities, Vancouver, British Columbia, Canada | M.F., Newton, MA |
| 23 | 11/30/02 | Arbor Securities, Vancouver, British Columbia, Canada | R.D., Arlington, MA |
| 24 | 12/31/02 | Arbor Securities, Vancouver, British Columbia, Canada | W.C.F. Trust, Newton, MA |
| 25 | 12/31/02 | Arbor Securities, Vancouver, British Columbia, Canada | T. Family Trust, Groton, MA |

| COUNT | DATE | SENDER | RECIPIENT |
|---|---|---|---|
| 26 | 01/31/03 | Arbor Securities, Vancouver, British Columbia, Canada | A.B., Falmouth, MA |
| 27 | 1/31/03 | Arbor Securities, Vancouver, British Columbia, Canada | N.F., Newton Highlands, MA |
| 28 | 01/31/03 | Arbor Securities, Vancouver, British Columbia, Canada | E.F. and R.F., Weston, MA |
| 29 | 3/31/03 | Arbor Securities, Vancouver, British Columbia, Canada | M.F., Cambridge, MA |
| 30 | 04/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | S.T., Groton, MA |
| 31 | 04/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | S.L., Norwood, MA |
| 32 | 04/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | M.C., Dedham, MA |
| 33 | 04/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | W.A., Falmouth, MA |
| 34 | 04/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | M.S., Chelmsford, MA |
| 35 | 5/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | A.B., Somerville, MA |
| 36 | 5/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | M.B., Duxbury, MA |
| 37 | 5/30/03 | Arbor Securities, Vancouver, British Columbia, Canada | A.S. and E.S., Worcester, MA |

All in violation of Title 18 U.S.C. §§ 1341 and 2.

A TRUE BILL

*[signature: Roger Allen]*

FOREPERSON OF THE GRAND JURY

*[signature]*

VICTOR A. WILD
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS,

March  17 , 2005

Returned into the District Court by the Grand Jurors and filed.

*[signature]*
Deputy Clerk

3/17/05
@3:25 pm.

JS 45 (5/97) - (Revised USAO MA 6/29/04)

05 CR 10068 RCL

**Criminal Case Cover Sheet** — U.S. District Court - District of Massachusetts

Place of Offense: MASSACHUSE    Category No. 2    Investigating Agency: FBI

City: NEWTON

County: MIDDLESEX

Related Case Information:
Superseding Ind./ Inf. _____ Case No. _____
Same Defendant _____ New Defendant _____
Magistrate Judge Case Number _____
Search Warrant Case Number _____
R 20/R 40 from District of _____

**Defendant Information:**

Defendant Name: THURSTON GENE GILMAN    Juvenile: [ ] Yes  [X] No

Alias Name:

Address: 11 Morse Road, Newton, MA

Birth date (Year only): 1942    SSN (last 4 #): 6388    Sex: m    Race: caucasion    Nationality: U.S.

Defense Counsel if known: Thomas M. Hoopes    Address: 175 Federal Street, Boston, MA 02110

Bar Number:

**U.S. Attorney Information:**

AUSA: VICTOR A. WILD    Bar Number if applicable: 543148

Interpreter: [ ] Yes [X] No    List language and/or dialect: _____

Matter to be SEALED: [ ] Yes [X] No

[ ] Warrant Requested    [X] Regular Process    [ ] In Custody

**Location Status:**

Arrest Date: _____

[ ] Already in Federal Custody as _____ in _____
[ ] Already in State Custody _____    [ ] Serving Sentence    [ ] Awaiting Trial
[ ] On Pretrial Release: Ordered by _____ on _____

Charging Document: [ ] Complaint    [ ] Information    [X] Indictment

Total # of Counts: [ ] Petty    [ ] Misdemeanor    [X] Felony 37

Continue on Page 2 for Entry of U.S.C. Citations

[ ] I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

Date: March 17, 2005    Signature of AUSA: _____

05 CR 10068 RCL

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number  (To be filled in by deputy clerk): _____

Name of Defendant    THURSTON GENE GILMAN

U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1   15 U.S.C. §§ 80b-6, 80b- | Investment Adviser's Act | 1 |
| Set 2   18 U.S.C. §1343 | Wire Fraud | 2-19 |
| Set 3   18 U.S.C. §1341 | Mail Fraud | 20-37 |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION: